# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. SA-12-CR-324-FB |
| | § | |
| FRANCISCO VILLARREAL(2) | § | |

## VERIFIED CLAIM OF MIREYA VILLARREAL AND PETITION
## ASSERTING LEGAL INTEREST IN PROPERTY SUBJECT TO FORFEITURE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW MIREYA VILLARREAL** and files this her Verified Claim and Petition Asserting Legal Interest in Property Subject to Forfeiture. In connection with this instrument, MIREYA VILLARREAL, hereinafter referred to as "Claimant" and would respectfully show the Court as follows:

## I.

## PROCEDURAL HISTORY

1.      On April 4, 2012, and Indictment was issued in this cause which named Francisco Villarreal as a defendant in a drug trafficking and money laundering conspiracy which allegedly operated from February 1, 2011 to April 4, 2012. The indictment in such cause alleged Defendant and his co-conspirators should forfeit $2,362,500.00 in assets and that should such assets not be available, substitute assets should be forfeited.   On November 12, 2012, Defendant Francisco Villarreal entered into a written Plea Agreement.  Without confirming he held any legal interest in the subject properties, Defendant Francisco Villarreal agreed to forfeit any interest he might hold in the subject properties.  Moreover, a money judgment of $800,000.00 was sought from Defendant Francisco Villarreal.  On May 12, 2014, the Government filed its Motion for Forfeiture of Substitute Assets and To Begin Ancillary Proceedings in order to collect its $800,000.00 money judgment.   On or about May 12, 2014, this Court entered an Order of Forfeiture of Substitute Assets and to Begin Ancillary Proceedings, finding the real property identified in such order (hereinafter, the "property"), is subject to forfeiture to the United States pursuant to Title 21 U.S.C. Section 853(p) as a substitute asset.  In such Order, the Court

"ORDERED that the United States of America shall send Direct Notice of Order of Forfeiture, Appendix D, which is attached to the United States of America's Motion for Forfeiture of Substitute Asset and to Begin Ancillary Proceedings and incorporated herein along with the Order of Forfeiture of Substitute Asset to Mireya Villarreal, . . . ."   Claimant files this instrument despite not having been provided the Court-ordered notice.   Claimant would further note that the Government was ordered to give notice to "those known" to have an interest in the subject properties.   Claimant is not aware of notices being provided as ORDERED and asks the Court to permit additional third parties, if any, to file any appropriate third-party claims after being provided the Court-ordered notices -- if no notices were delivered as ORDERED.

2.      Claimant files this her claim pursuant to 21 U.S.C. § 853 (n). In conformity with Rule 32.2 of the Federal Rules of Criminal Procedure and Title 21 U.S.C. § 853 (n), MIREYA VILLARREAL files this instrument requesting the Court to sustain her claim and adjudicate her legal interest in the subject property.

3.      For the reasons outlined below, Claimant prays the Court find the forfeiture rules and statutes are unconstitutional and are unconstitutional as applied to her.

4.      For the reasons outlined below and pursuant to Rule 32.2(c)(1)(a) of the Federal Rules of Criminal Procedure, Claimant prays the Court dismiss the Government's motion with prejudice for failing to state a claim.

## II.
## PRELIMINARY OBJECTIONS

5.      Claimant would represent to the Court that Title 21 U.S.C. Section 853 contemplates the forfeiture of assets belonging to "a person convicted of a felony."   In its Motion for Forfeiture of Substitute Assets and To Begin Ancillary Proceedings, the Government has failed to meet its initial burden of establishing jurisdiction or procedural compliance with  Title 21 U.S.C. Section 853.

a.      As noted, the Government obtained a money judgment for $800,000.00 from Defendant

Francisco Villarreal for criminal conduct occurring between February 1, 2011 and April 4, 2012.

    b.    By the Government's pleadings, Mireya Villarreal acquired, as her sole and separate property, the subject real property via a deed dated February 20, 2007 (four years before the defendant's participation in the conspiracy) and a deed dated February 1, 2010 (one year before the conspiracy began).  On their face, the Government's pleadings fail to demonstrate Defendant's ownership of the subject property or any nexus between the subject property and any criminal activity by anyone as required by Title 21 U.S.C. Sections 853 and 881, Title 18 U.S.C. Section 982 and Rule 32.2 of the Federal Rules of Criminal Procedure.

    c.    In attempting to create a nexus between claimant's separate property real estate transactions and the subsequent criminal conduct of Defendant Francisco Villarreal, the Government attached different exhibits to its pleading.  The deeds speak for themselves and reflect separate property transactions by Claimant prior to the conspiracy.  However, the Government attached as Appendix C to its Motion for Forfeiture of Substitute Assets and To Begin Ancillary Proceedings (Document 788-4), the Affidavit of Special Agent Joel Juvette.  The document has introductory language reflecting "the information was either gathered by me in the course of my official duties or is information I know from my own personal knowledge."  The affidavit proceeds to indicate the affiant "reviewed" different documents and that Defendant Francisco Villarreal is "known" to acquire properties via straw purchasers.  Clearly, the Government has no witness with personal knowledge of any transaction or criminal activity related to the specific properties at issue or Claimant's alleged participation as a straw buyer prior to the conspiracy.  The Government provides no nexus between 2011 and 2012 criminal conduct and prior real estate purchases by Claimant.  Without any such nexus, the Government has provided no facts to confer jurisdiction upon the Court to determine the rights of Claimant in the subject property.  Pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure, Claimant moves for dismissal of the Motion for Forfeiture of Substitute Assets and To Begin Ancillary Proceedings as the same fails to state a viable claim.

    d.    Claimant objects to the Constitutionality of Rule 32.2 of the Federal Rules of Civil Procedure along with Title 21 U.S.C. Sections 853 and 881 and Title 18 U.S.C. Section 982.  Moreover, Claimant objects to the Constitutionality of Rule 32.2 of the Federal Rules of Civil Procedure along with Title 21 U.S.C. Sections 853 and 881 and Title 18 U.S.C. Section 982 as the

3

same are applied to Claimant.    While the Federal Rules of Criminal Procedure were amended in 2002 and 2009 in criminal forfeiture cases and Title 18 U.S.C. Section 982 was amended in 2000 and 2010 and Title 21 U.S.C. Sections 853 and 881 were also amended in 2000, 2005 and 2009, the procedures continue to violate the due process rights afforded by the 5th and 14th amendments to the United States Constitution; the right to remain silent afforded by the 5th amendment to the United States Constitution; the right to effective assistance of counsel as afforded by the 6th amendment to the United States Constitution,  the right to equal protection under the law as afforded by the 14th amendment to the United States Constitution and the right to a jury as afforded by the 6th and 7th amendments to the United States Constitution.

As noted, criminal defendants possess many constitutional rights which are incorporated into the procedural and statutory scheme,  including the right to have counsel effectively present arguments to the trial court and jury.  *See, also*, Rules 32.2(b)(5), (c) and (e)(3) and 7(c) of the Federal Rules of Criminal Procedure.   In contrast, and as evident by the Government's pleadings in this cause, the Government seeks forfeiture of a substituted asset:

i.    without any nexus to an identified crime;

ii.    without a trial by jury; (Rule 32.2(e)(3))

iii.    while placing the burden on the Claimant to establish Claimant's rights by a preponderance of evidence;

iv.    without placing the burden on the Government to establish the asset is subject to forfeiture;

v.    while denying Claimant the presumption of innocence

vi.    while denying Claimant the presumption that Claimant was in lawful possession of an asset which was not subject to forfeiture;

vii.    without providing personal service upon a Claimant;

viii.    while permitting the trial court to consider (in violation of *Crawford*) "portions of the record of the criminal case" when Claimant was not a party to such action;

ix.    while subjecting Claimant to the penalties of perjury is Claimant desired to make a claim for Claimant's property when the Government and its agents are under no similar threat;

x.    while forcing a Claimant to waive Claimant's Fifth Amendment right to remain silent

4

and risk criminal prosecution in order to pursue a legitimate claim;

    xi.    without forcing the Government to provide any advanced notice to Claimant of what conduct Claimant did illegally with the subject property;

    xii.    without forcing the Government to provide any advanced notice to Claimant of what conduct a third party (criminal defendant) did illegally with the subject property; and

    xiii.    while "the facts set forth in the petition are assumed to be true."

Such a procedure puts the Government rights ahead of Claimants and leaves Claimant's rights inferior to the rights of any criminal defendant. *See, United States v. Myers*, 21 F.3d 826 (8th Cir. 1994); *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996); *United States v. Smith*, 966 F.2d 1045, 1050 - 53 (6th Cir. 1992); and *United States v. Bieri*, 21 F.3d 819 (8th Cir. 1994). Clearly, the forfeiture rules and procedures cited are unconstitutional. The forfeiture rules and procedures cited are definitely unconstitutional as applied to Claimant, an individual whose "substituted assets" are in Claimant's sole name, when Claimant was not a party to the indictment, and when Claimant was denied the basic Constitutional rights afforded criminal defendants in this cause. Claimant prays the Court find Rule32.2 of the Federal Rules of Criminal Procedure along with Title 21 U.S.C. Sections 853 and 881 and Title 18 U.S.C. Section 982 are unconstitutional and, alternatively, find the same are unconstitutional as applied to Claimant.

    d.    In Appendix C of its Motion for Forfeiture of Substitute Assets and To Begin Ancillary Proceedings, the Government (via its affiant) wishes to leave the Court with the impression that the substituted assets are community property. Such an argument is without legal foundation and ignores the fact that the documents reflect Claimant received the real property as her sole and separate property. Pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure, Claimant moves for dismissal of the Motion for Forfeiture of Substitute Assets and To Begin Ancillary Proceedings as the same fails to state a viable claim.

    e.    Given the facts presented to the Court, Claimant prays this matter be dismissed for want of jurisdiction, with prejudice.

## III.

## DESCRIPTION OF CLAIMANT'S INTEREST

6.     MIREYA VILLARREAL, Claimant herein is a lifelong resident of the Rio Grande Valley. Like many residents of the area, Claimant's family is from Mexico and different family members reside in Mexico.    Moreover, Claimant's family has different business ventures in Mexico and owns real estate in Mexico.    By Mexican law and Texas law, Claimant's separate property does not change its separate property character by virtue of marriage.    Prior to marriage and during the course of her marriage, Claimant has maintained her separate property and any community property acquired during the marriage was minimal.

Defendant Francisco Villarreal was similarly a Rio Grande Valley resident, but Defendant is a Mexican national.    Defendant's conviction in this cause will result in his deportation.    Like Claimant, Defendant Francisco Villarreal's family had different real estate holdings and investments in Mexico. During his marriage to Claimant, Defendant maintained the separate property character of items acquired prior to marriage and acquired additional property by gift, devise or descent during the marriage.

Claimant acknowledges the legitimacy of documents 788-2 and 788-3, the deeds conveying the subject property to Claimant "as her sole and separate property" and "as her separate property and estate" in 2007 and 2010, far before the existence of any conspiracy.    Claimant's real property was always kept separate from Defendant's real property and Defendant maintained his real property separate from Claimant's.    Claimant secured the real property with Claimant's separate property on the dates indicated in the warranty deeds.   The real property was never owned by Defendant and Defendant has never claimed any interest in Claimant's separate property.    Being the sole owner to the property as evidenced by the real property records and all contracts executed in association with the original purchase, Claimant files this instrument as her original claim and petition to adjudicate interest. Defendant Francisco Villarreal has no ownership interest in the subject property.    Claimant would represent to the Court that she has a right, title and interest in the subject property that renders the preliminary order of forfeiture invalid, in whole or in part, because the right, title and interest in the subject property was vested in Claimant rather than Defendant Francisco Villarreal and

Claimant's right, title and interest was superior to that of Defendant Francisco Villarreal at the time of the commission of the alleged acts which gave rise to the forfeiture of the property under this section. Claimant has no information about the conduct of Defendant Francisco Villarreal and demands the Government establish probable cause, nexus and jurisdiction.

7.     Alternatively, and without waiving the foregoing, Claimant would represent to the Court that she is an "innocent owner" as defined by law as she had no knowledge of any illegal actions on the part of Defendant Francisco Villarreal. *See, U.S. v. A Parcel of Land, Buildings, Appurtenances and Improvements Known as 92 Buena Vista Avenue*, 507 U.S. 111 (1993).

8.     In further support of Claimant's separate property ownership claims and Claimant's innocent owner arguments, Claimant would represent to the Court that Claimant and Defendant Francisco Villarreal had ample legitimate sources of income during their marriage. Claimant still does not understand what caused Defendant Francisco Villarreal to engage in criminal conduct. Regardless, Defendant Francisco Villarreal appears to have secretly engaged in criminal conduct as evidenced by his plea of guilty before this Honorable Court. Upon being arrested, other secrets revealed themselves. Different women claiming to be mistresses of Defendant Francisco Villarreal appeared and demanded their "mensualidades" (monthly stipends). One woman appeared and demanded assistance for herself and the illegitimate child of Defendant Francisco Villarreal. After confirming Defendant's infidelities and siring a child outside of wedlock during his marriage to Claimant, Claimant obtained a divorce from Defendant Francisco Villarreal. Said decree was entered in Hidalgo County, Texas in Cause No. F3016-13-6, styled In the Matter of the Marriage of Mireya Villarreal and in the Interest of Francisco Javier Villarreal, Ixdel Villarreal, Dexaly Villarreal and Yulian Villarreal, Minor Children. Such decree of divorce legitimately confirmed Claimant's separate property claims as a matter of law, a copy of which is attached hereto and incorporated by reference for all purposes. While Defendant Francisco Villarreal maintains assets in Mexico with which to pay the outstanding judgment, Claimant has been left to fend for herself and her four children. Claimant was the dutiful wife and innocent spouse who now suffers the financial and personal responsibilities resulting from Claimant misplacing her trust in an individual who ultimately

7

proved to be living several secret lives -- not being honest with his wife, his multiple lovers or the Government.

9. Should the Court deny Claimant's objections to the jurisdiction of the Court and Claimant's motion to dismiss the Government's petition, Claimant respectfully requests that the Court schedule a hearing regarding this petition under 21 U.S.C. Section 853 (n) at the earliest practicable date to adjudicate Claimant's interest in the subject property. Claimant further requests the Court conduct a status conference where discovery orders may be issued in this cause, thereby permitting Claimant to properly discover and address the factual and evidentiary issues associated with this cause.

10. Pursuant to the Equal Access to Justice Act, Claimant demands attorney fees be awarded to her for having to defend her interest in the subject property. *See, U.S. v. Douglas*, 55 F.3d 584 (11th Cir. 1995).

**WHEREFORE, PREMISES CONSIDERED,** Claimant respectfully requests Claimant's objections be sustained, Claimant's motion to dismiss be granted, that this petition be granted, that a hearing be set at the earliest practicable date to adjudicate Claimant's interest in the property and for such other and further relief at law or in equity to which Claimant may be justly entitled.

Respectfully submitted,

**DEMETRIO DUARTE, JR. &**
**ASSOCIATES, P.C.**
2200 Warner
San Antonio, Texas 78201
(210)737-6676 Telephone
(210)733-6181 Facsimile

**ATTORNEYS FOR CLAIMANT**

By: _____
**DEMETRIO DUARTE, JR.**
State Bar No. 06144125

## VERIFICATION

Under penalties of perjury, I declare that I have examined this first amended verified claim and third party petition, and to the best of my knowledge and belief it is true and correct.

Executed on June 10, 2014

_____
**MIREYA VILLARREAL**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was delivered to the following parties pursuant to the Federal Rules of Civil Procedure on this 10th day of June, 2014 as indicated below and via the electronic filing system.

AUSA Diana Cruz-Zapata
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

_____
**DEMETRIO DUARTE, JR.**

9

NO. F3016-13-6

| | |
|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MIREYA VILLARREAL | § | |
| AND | § | |
| FRANCISCO VILLARREAL | § | CC6 JUDICIAL DISTRICT |
| | § | |
| AND IN THE INTEREST OF | § | |
| FRANCISCO JAVIER VILLARREAL, | § | |
| IXDEL VILLARREAL, DEXALY | § | |
| VILLARREAL AND YULIAN | § | HIDALGO COUNTY, TEXAS |
| VILLARREAL, CHILDREN | § | |

## FINAL DECREE OF DIVORCE

On this date the Court heard the Final Hearing on this case.   Petitioner, MIREYA

VILLARREAL, appeared in person and through attorney of record, OSCAR DE LA FUENTE,

JR., and announced ready for trial.

Respondent, FRANCISCO VILLARREAL, duly executed a notarized Waiver of Service

which has been on file with the Court the required number of days and is otherwise in

compliance with all legal requirements.   The Court takes judicial notice of said Waiver of

Service and hereby accepts it for all purposes.

*Record*

The making of a record of testimony was done by a duly certified court reporter.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the

allegations, information, and prerequisites required by law.   The Court, after receiving evidence,

finds that it has jurisdiction of this case and of all the parties and that at least sixty days have

elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a

domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Divorce*

IT IS ORDERED AND DECREED that MIREYA VILLARREAL, Petitioner, and FRANCISCO VILLARREAL, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children:

Name: FRANCISCO JAVIER VILLARREAL

Sex:       MALE

Birth date:     May 21, 1997

Home state:     Texas

Name: IXDEL VILLARREAL

Sex:       FEMALE

Birth date:     June 28, 2000

Home state:     Texas

Name: DEXALY VILLARREAL

Sex:       FEMALE

Birth date:     May 18, 2004

Home state:     Texas

Name: YULIAN VILLARREAL

Sex:      MALE

Birth date:      October 14, 2007

Home state:      Texas

The Court finds no other children of the marriage are expected.

*Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

*Conservatorship*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that MIREYA VILLARREAL is appointed Sole Managing Conservator and FRANCISCO VILLARREAL is appointed Possessory Conservator of the following children:   FRANCISCO JAVIER VILLARREAL, IXDEL VILLARREAL, DEXALY VILLARREAL and YULIAN VILLARREAL.

IT IS ORDERED that, at all times, MIREYA VILLARREAL, as a parent sole managing conservator, shall have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.      the right of access to medical, dental, psychological, and educational records of the children;

4.      the right to consult with a physician, dentist, or psychologist of the children;

5.    the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.    the right to attend school activities;

7.    the right to be designated on the children's records as a person to be notified in case of an emergency;

8.    the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.    the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, FRANCISCO VILLARREAL, as a parent possessory conservator, shall have the following rights:

1.    the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.    the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.    the right of access to medical, dental, psychological, and educational records of the children;

4.    the right to consult with a physician, dentist, or psychologist of the children;

5.    the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.    the right to attend school activities;

7.    the right to be designated on the children's records as a person to be notified in case of an emergency;

8.    the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.    the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, MIREYA VILLARREAL, as a parent sole managing conservator shall have the following duties:

1.    the duty to inform the other conservator of the children in a timely manner of

4

significant information concerning the health, education, and welfare of the children; and

2.        the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.   WARNING:   A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, at all times, FRANCISCO VILLARREAL, as a parent possessory conservator, shall have the following duties:

1.        the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2.        the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.   WARNING:   A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her periods of possession, MIREYA VILLARREAL, as a parent sole managing conservator, shall have the following rights and duties:

1.        the duty of care, control, protection, and reasonable discipline of the children;

2.        the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.        the right to consent for the children to medical and dental care not involving an invasive procedure; and

5

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his periods of possession, FRANCISCO VILLARREAL, as a parent possessory conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that MIREYA VILLARREAL, as parent sole managing conservator, shall have the following exclusive rights and duty:

1. the right to designate the primary residence of the children;

2. the right to consent to medical, dental, and surgical treatment involving invasive procedures;

3. the right to consent to psychiatric and psychological treatment of the children;

4. the right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

5. the right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

6. the right to consent to marriage and to enlistment in the armed forces of the United States;

7. the right to make decisions concerning the children's education;

8. except as provided by section 264.0111 of the Texas Family Code, the right to the services and earnings of the children;

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

10. the duty to manage the estates of the children to the extent the estates have been

6

created by community property or the joint property of the parents.

*Possession and Access*

1.   *Standard Possession Order*

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Standard Possession Order.  IT IS ORDERED that this Standard Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Standard Possession Order.  IT IS, THEREFORE, ORDERED:

(a)   Definitions

1.   In this Standard Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.   In this Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)   Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Standard Possession Order.

(c)   Parents Who Reside 100 Miles or Less Apart

Except as otherwise expressly provided in this Standard Possession Order, when FRANCISCO VILLARREAL resides 100 miles or less from the primary residence of the child, FRANCISCO VILLARREAL shall have the right to possession of the child as follows:

1.   Weekends –

On weekends that occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

On weekends that do not occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

7

2.   Weekend Possession Extended by a Holiday –

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by FRANCISCO VILLARREAL begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 p.m. on the immediately preceding Thursday.

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by FRANCISCO VILLARREAL ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

3.   Thursdays - On Thursday of each week during the regular school term, beginning at 6:00 p.m. and ending at 8:00 p.m.

4.   Spring Vacation in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

5.   Extended Summer Possession by FRANCISCO VILLARREAL –

With Written Notice by April 1 - If FRANCISCO VILLARREAL gives MIREYA VILLARREAL written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FRANCISCO VILLARREAL shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m on each applicable day, as specified in the written notice.   These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Without Written Notice by April 1 - If FRANCISCO VILLARREAL does not give MIREYA VILLARREAL written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FRANCISCO VILLARREAL shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

Notwithstanding the Thursday periods of possession during the regular

8

school term and the weekend periods of possession ORDERED for FRANCISCO VILLARREAL, it is expressly ORDERED that MIREYA VILLARREAL shall have a superior right of possession of the child as follows:

1.     Spring Vacation in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2.     Summer Weekend Possession by MIREYA VILLARREAL - If MIREYA VILLARREAL gives FRANCISCO VILLARREAL written notice by April 15 of a year, MIREYA VILLARREAL shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by FRANCISCO   VILLARREAL   in   that   year,   provided   that   MIREYA VILLARREAL picks up the child from FRANCISCO VILLARREAL and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

3.     Extended Summer Possession by MIREYA VILLARREAL - If MIREYA VILLARREAL gives FRANCISCO VILLARREAL written notice by April 15 of a year or gives FRANCISCO VILLARREAL fourteen days' written notice on or after April 16 of a year, MIREYA VILLARREAL may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by FRANCISCO VILLARREAL shall not take place in that year, provided that the weekend so designated does not interfere with FRANCISCO VILLARREAL's period or periods of extended summer possession or with Father's Day possession.

(d)     Parents Who Reside More Than 100 Miles Apart

Except as otherwise expressly provided in this Standard Possession Order, when FRANCISCO VILLARREAL resides more than 100 miles from the residence of the child, FRANCISCO VILLARREAL shall have the right to possession of the child as follows:

1.     Weekends - Unless FRANCISCO VILLARREAL elects the alternative period of weekend possession described in the next paragraph, FRANCISCO VILLARREAL shall have the right to possession of the child on weekends that occur during the regular school term, beginning at 6:00 p.m. on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday, and on weekends that do not occur during the regular school term, beginning at 6:00 p.m. on the first, third and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

9

Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, FRANCISCO VILLARREAL shall have the right to possession of the child not more than one weekend per month of FRANCISCO VILLARREAL's choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. FRANCISCO VILLARREAL may elect an option for this alternative period of weekend possession by giving written notice to MIREYA VILLARREAL within ninety days after the parties begin to reside more than 100 miles apart. If FRANCISCO VILLARREAL makes this election, FRANCISCO VILLARREAL shall give MIREYA VILLARREAL fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day possession below.

2.    Weekend Possession Extended by a Holiday –

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by FRANCISCO VILLARREAL begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 p.m. on the immediately preceding Thursday.

3.    Spring Vacation in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by FRANCISCO VILLARREAL ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

4.    Extended Summer Possession by FRANCISCO VILLARREAL –

With Written Notice by April 1 - If FRANCISCO VILLARREAL gives MIREYA VILLARREAL written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FRANCISCO VILLARREAL shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m. on each applicable day, as specified in the

written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Without Written Notice by April 1 - If FRANCISCO VILLARREAL does not give MIREYA VILLARREAL written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FRANCISCO VILLARREAL shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

Notwithstanding the weekend periods of possession ORDERED for FRANCISCO VILLARREAL, it is expressly ORDERED that MIREYA VILLARREAL shall have a superior right of possession of the child as follows:

1.    Summer Weekend Possession by MIREYA VILLARREAL - If MIREYA VILLARREAL gives FRANCISCO VILLARREAL written notice by April 15 of a year, MIREYA VILLARREAL shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by FRANCISCO VILLARREAL during FRANCISCO VILLARREAL's extended summer possession in that year, provided that if a period of possession by FRANCISCO VILLARREAL in that year exceeds thirty days, MIREYA VILLARREAL may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that MIREYA VILLARREAL picks up the child from FRANCISCO VILLARREAL and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

2.    Extended Summer Possession by MIREYA VILLARREAL - If MIREYA VILLARREAL gives FRANCISCO VILLARREAL written notice by April 15 of a year, MIREYA VILLARREAL may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which FRANCISCO VILLARREAL shall not have possession of the child, provided that the period or periods so designated do not interfere with FRANCISCO VILLARREAL's period or periods of extended summer possession or with Father's Day possession. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

(e)    Holidays Unaffected by Distance

Notwithstanding the weekend and Thursday periods of possession of FRANCISCO VILLARREAL, MIREYA VILLARREAL and FRANCISCO VILLARREAL shall have the right to possession of the child as follows:

1.    Christmas Holidays in Even-Numbered Years - In even-numbered years, FRANCISCO VILLARREAL shall have the right to possession of the child

11

beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and MIREYA VILLARREAL shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

2. Christmas Holidays in Odd-Numbered Years - In odd-numbered years, MIREYA VILLARREAL shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and FRANCISCO VILLARREAL shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3. Thanksgiving in Odd-Numbered Years - In odd-numbered years, FRANCISCO VILLARREAL shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

4. Thanksgiving in Even-Numbered Years - In even-numbered years, MIREYA VILLARREAL shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5. Child's Birthday - If a parent is not otherwise entitled under this Standard Possession Order to present possession of a child on the child's birthday, that parent shall have possession of the child and the child's minor siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the children from the other parent's residence and returns the children to that same place.

6. Father's Day - FRANCISCO VILLARREAL shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if FRANCISCO VILLARREAL is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from MIREYA VILLARREAL's residence and return the child to that same place.

7. Mother's Day - MIREYA VILLARREAL shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if MIREYA VILLARREAL is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the child from FRANCISCO VILLARREAL's residence and return the child to that same place.

(f)     Undesignated Periods of Possession

MIREYA VILLARREAL shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for FRANCISCO VILLARREAL.

(g)     General Terms and Conditions

Except as otherwise expressly provided in this Standard Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.     Surrender of Child by MIREYA VILLARREAL - MIREYA VILLARREAL is ORDERED to surrender the child to FRANCISCO VILLARREAL at the beginning of each period of FRANCISCO VILLARREAL's possession at the residence of MIREYA VILLARREAL.

2.     Surrender of Child by FRANCISCO VILLARREAL - FRANCISCO VILLARREAL is ORDERED to surrender the child to MIREYA VILLARREAL at the residence of FRANCISCO VILLARREAL at the end of each period of possession.

3.     Surrender of Child by FRANCISCO VILLARREAL - FRANCISCO VILLARREAL is ORDERED to surrender the child to MIREYA VILLARREAL, if the child is in FRANCISCO VILLARREAL's possession or subject to FRANCISCO VILLARREAL's control, at the beginning of each period of MIREYA VILLARREAL's exclusive periods of possession, at the place designated in this Standard Possession Order.

4.     Return of Child by MIREYA VILLARREAL - MIREYA VILLARREAL is ORDERED to return the child to FRANCISCO VILLARREAL, if FRANCISCO VILLARREAL is entitled to possession of the child, at the end of each of MIREYA VILLARREAL's exclusive periods of possession, at the place designated in this Standard Possession Order.

5.     Personal Effects - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

6.     Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

7.     Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for

13

any specified period.

8.    Written Notice - Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due.

This concludes the Standard Possession Order.

2.    *Duration*

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

3.    *Noninterference with Possession*

Except as expressly provided herein, IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

4.    *Termination of Orders*

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of MIREYA VILLARREAL to FRANCISCO VILLARREAL unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

*Child Support*

IT IS ORDERED that FRANCISCO VILLARREAL is obligated to pay and shall pay to MIREYA VILLARREAL child support of two thousand dollars ($2000) per month, with the first payment being due and payable on November 1, 2013 and a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.    all children have reached the age of eighteen years or graduated from high school,

whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. all children have married;

3. all children have died;

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that FRANCISCO VILLARREAL's obligation to pay child support to MIREYA VILLARREAL shall not terminate but shall continue for as long as the child is enrolled-

1. under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2. on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

Withholding from Earnings

IT IS ORDERED that any employer of FRANCISCO VILLARREAL shall be ordered to withhold from earnings for child support from the disposable earnings of FRANCISCO VILLARREAL for the support of FRANCISCO JAVIER VILLARREAL, IXDEL VILLARREAL, DEXALY VILLARREAL and YULIAN VILLARREAL.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of FRANCISCO VILLARREAL by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full

15

amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of FRANCISCO VILLARREAL, and it is hereby ORDERED that FRANCISCO VILLARREAL pay the balance due directly to the state disbursement unit specified below.

On this date the Court authorized the issuance of an Income Withholding for Support.

Payment

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to MIREYA VILLARREAL for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

Change of Employment

IT IS FURTHER ORDERED that FRANCISCO VILLARREAL shall notify this Court and MIREYA VILLARREAL by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of FRANCISCO VILLARREAL and the name and address of his current employer, whenever that information becomes available.

Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, MIREYA VILLARREAL, FRANCISCO VILLARREAL, or an attorney representing MIREYA VILLARREAL or FRANCISCO

16

VILLARREAL, the clerk of this Court shall cause a certified copy of the Income Withholding for Support to be delivered to any employer.

### Suspension of Withholding from Earnings

The Court finds that good cause exists that no order to withhold from earnings for child support should be delivered to any employer of FRANCISCO VILLARREAL as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to MIREYA VILLARREAL. For the purpose of this provision, a delinquency has occurred if FRANCISCO VILLARREAL has been in arrears for an amount due for more than thirty days or the amount of the arrearages equals or is greater than the amount due for a one-month period. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to MIREYA VILLARREAL, the clerk shall deliver the order to withhold earnings as provided above.

ACCORDINGLY, IT IS ORDERED that, as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to MIREYA VILLARREAL, all payments shall be made through the state disbursement unit and thereafter promptly remitted to MIREYA VILLARREAL for the support of the children. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to MIREYA VILLARREAL, all payments shall be made in accordance with the order to withhold earnings as provided above.

*Health Care*

1.    IT IS ORDERED that FRANCISCO VILLARREAL shall provide medical support for each child as set out in this order as additional child support for as long as the Court

may order FRANCISCO VILLARREAL to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code.   Beginning on the day FRANCISCO VILLARREAL's actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that FRANCISCO VILLARREAL is discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent to fully comply with those obligations before that date.   IT IS FURTHER ORDERED that the cash medical support payments ordered below are payable through the state disbursement unit and subject to the provisions for withholding from earnings provided above for other child support payments.

2. Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which FRANCISCO VILLARREAL is responsible under a medical support order that does not exceed 9 percent of FRANCISCO VILLARREAL 's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges.   These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care

18

provider or for nonprescription medication.

"Furnish" means:

a.    to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b.    to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c.    to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

3.    Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

No parent has access to private health insurance at a reasonable cost.

4.    Provision of Health-Care Coverage -

MIREYA VILLARREAL is ORDERED to continue coverage under a governmental medical assistance program or health plan for each child who is the subject of this suit.

When such health coverage is obtained, MIREYA VILLARREAL is ORDERED to maintain the coverage in full force and effect on each child who is the subject of this suit as long as child support is payable for that child, by paying all applicable fees required for the coverage, including but not limited to enrollment fees and premiums.

IT IS ORDERED that the cash medical support provisions of this order shall be an

19

obligation of the estate of FRANCISCO VILLARREAL and shall not terminate on his death.

FRANCISCO VILLARREAL is allowed to discontinue payment of cash medical support, for the time FRANCISCO VILLARREAL is providing coverage, if-

a.   health insurance for the children becomes available to FRANCISCO VILLARREAL at a reasonable cost;

b.   FRANCISCO VILLARREAL enrolls the children in the insurance plan; and

c.   FRANCISCO VILLARREAL provides MIREYA VILLARREAL the information required under section 154.185 of the Texas Family Code.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance or are not otherwise covered by the amount of cash medical support under section 154.182(b) are allocated as follows: MIREYA VILLARREAL is ORDERED to pay 50 percent and FRANCISCO VILLARREAL is ORDERED to pay 50 percent of the total health-care expenses that exceed the amount of cash medical support paid by FRANCISCO VILLARREAL.

The party who incurs a health-care expense on behalf of the children is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them.   The nonincurring party is ORDERED to pay his or her share or percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's share or percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any child who is the subject of this order for the provision of health-care coverage that are incurred while cash medical support is payable for that child.

5.      WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

*Miscellaneous Child Support Provisions*

Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of FRANCISCO VILLARREAL and shall not terminate on the death of FRANCISCO VILLARREAL. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of FRANCISCO VILLARREAL's estate.

Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of MIREYA VILLARREAL to FRANCISCO VILLARREAL unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of MIREYA

VILLARREAL, but continues as an obligation to FRANCISCO JAVIER VILLARREAL, IXDEL VILLARREAL, DEXALY VILLARREAL and YULIAN VILLARREAL.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: MIREYA VILLARREAL

| | |
|---|---|
| Social Security number: | 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 |
| Driver's license number: | 16729898    Issuing state:   Texas |
| Current residence address: | 5701 Carla St, Mission, Texas   78574 |
| Mailing address: | 5701 Carla St, Mission, Texas   78574 |
| Home telephone number: | 956-519-1381 |
| Name of employer: | FIDY Transport |
| Address of employment: | 1314 Texano Dr., Hidalgo, Texas 78557 |
| Work telephone number: | 956-519-1381 |

Name: FRANCISCO VILLARREAL

| | |
|---|---|
| Social Security number: | 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 |
| Driver's license number | None |
| Current residence address: | 5701 Carla St, Mission, Texas   78574 |
| Mailing address: | 5701 Carla St, Mission, Texas   78574 |
| Home telephone number: | 956-519-1381 |

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT,

DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at P.O. Box 87, Edinburg, Texas 78540. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract

23

Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A

24

CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

Mireya Villarreal's Separate Property

The Court after having heard the evidence presented and after considering said evidence, HEREBY FINDS that the following property owned by Petitioner MIREYA VILLARREAL is her separate property and was acquired by her before and during the marriage by gift, devise and descent. Based on said evidence, the Court FURTHER FINDS that MIREYA VILLARREAL owns and possesses the following property as her sole and separate property and FURTHER FINDS that Respondent, FRANCISCO VILLARREAL, has no claim or interest in said property.

Accordingly, IT IS ORDERED ADJUDGED AND DECREED that the following property is the separate Property of Mireya Villarreal.

W-1.        Goodwin #1, Lot 66, Block 4, a 10 acre tract.

W-2.        The Goodwin Tract Subdivision No. 1, Lot sixty-six (66).

W-3.        Golden Crest Apartment Community, Ph2, Lot 42, Edinburg.

W-4.        Paradise Estates, Lots 22, 23, 24, 26, 36 and 37.

*Division of the Marital Estate*

The Court finds that no community property other than the business known as FIDY Transport and personal property and personal effects have been acquired by the parties during their marriage. Based on said findings, IT IS ORDERED AND DECREED that the personal property and personal effects of the parties are awarded to the party having possession of said property. In particular, the Court awards each party any vehicle in the party's possession and titled in such party's name, subject to all debt associated with such vehicles.

IT is further DECREED that any debt incurred by the parties shall be the

responsibility of the party incurring said debt.

<u>Notice</u>

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

<u>Attorney's Fees</u>

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those

26

described in this decree.  Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly

granted is denied. This is a final judgment, for which let execution and all writs and processes

necessary to enforce this judgment issue. This judgment finally disposes of all claims and all

parties and is appealable.

*Date of Judgment*

**SIGNED** on _____ 11/13/13 _____

**JUDGE PRESIDING**

DATE __11/13/13__
A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
BY_____ Deputy #294

28